at L. Mr. Lozaro for the appellant. Mr. Schaefer for the appellee. Good morning, your honors. James H. Lozaro representing Angela Clemente. Angela Clemente is a forensic intelligence analyst who sought records on Gregory Scarpa. Scarpa was a top echelon mafia informant who boasted of having committed more than 50 murders during the course of a decade and a half. As a result of this case and other litigation and other studies, she has documented more than 50 cases in which innocent persons were killed or maimed as a result of the collaborative effort between Scarpa and his FBI handlers, principally Lindley's supervisory special agent Lindley DeVecchio. A principal issue in this case is whether the records at issue were compiled for law enforcement purposes. The two decisions by this circuit set the standard for determining that, Pratt and Jefferson. And the standard is one that is deferential to the law but it is also not vacuous or there are some restraints on it. In terms of the actual decision in Pratt, there is a critical distinction between Pratt and the facts of this case. The court in Pratt held that the FBI met the deferential standard in favor of the FBI establishing that it had met the law enforcement threshold because the FBI had set forth its purposes, one of which was prevention of violence. That does not apply here. The activities of the FBI in this case were not designed to prevent violence, they fostered it. The two examples help drive this point home. One is the case of the 1992. Scarpa approached his handler DeVecchio and got DeVecchio to come to his home where he asked DeVecchio to provide him with information about where Limpazy lived and what hour he left for work. After a few days, DeVecchio met with Scarpa again and provided that information. On May 22 at 4 a.m., Scarpa and his crew, waiting in ambush, killed Limpazy. Why is it the case that the conduct, you're making arguments about the conduct that the individuals engaged in, which seems like a different question from whether the records were compiled for law enforcement purposes. Well, the conduct was based upon the records. What was provided was surveillance. The FBI had Limpazy under surveillance. DeVecchio got the information from the surveillance records and provided it to Scarpa. Then the ambush occurred and after the ambush occurred, Scarpa admitted to DeVecchio that he indeed had carried out the ambush. Perhaps another way of putting the question is, is your position that the fact that information that may have been compiled for law enforcement purposes is used for lawless purposes, take it outside the privilege? I think that you have to look at the If the results violate the core concept of law enforcement, if they go contrary to that, then I think the information that is used is not compiled for law enforcement purposes. Doesn't that seem in tension with the text of that provision, which talks about being compiled for law enforcement purposes, even if it might ultimately be used for a different purpose? Is there evidence that it was not compiled for law enforcement purposes? I think that, let me give you another example, which I think helps drive it through. Again, one way of measuring purpose is who does the job, who carries out the function. And we have the case of J. Edgar Hoover himself personally directing Scarpa to go to Mississippi to beat confessions out of witnesses to the civil rights murders that had occurred there. And he sends Scarpa, who is a That can't square with a law enforcement purpose. It would be, I think I follow your argument, circumstantial evidence that it's not for the purpose that's stated. Is that right? You're pointing to that as, in effect, circumstantial evidence of the purpose for which it was compiled. Yes, yes. You have to take that into account. Otherwise, you simply take into you simply base your decision on a pretextual reason rather than on the reality of what is happening. And I think Congress recognizes, Pratt speaks about the legislative history regarding the law enforcement threshold and says that Congress intended to reach a balance between the harm by disclosure of the kind of information otherwise protected under Exemption 7 and the public's right to know what is going on, what is happening. It might be helpful for us given that there were a series of disclosures and the dispute between the parties seemed to narrow and focus. But then in the end, in I think it was January 2016, the judge issued a final order dismissing the case. That was because the plaintiff did not meet the deadline, the non-movable deadline that the district judge had imposed for any objections to the latest Vaughn Index. And I wonder if you could really just focus us on what you think was prejudiced by that. How do you think your client was prejudiced by that? What is she still seeking? What would she have said about inadequacy of the Vaughn Index? Just really focus on that last piece. Well, what she was focusing on was that there were two motions for interim fees that were filed by Clemente. And the FBI basically conceded that Clemente was eligible for attorney's fees. She had not met the deadline. Now that's a little bit of a separate question from what I was asking, but since you raised that. Okay, go ahead. But I think I'm coming to it. What then happened, the second time, she basically rests her decision on the fact that she wants to get the case over with. And then what happens, so we go through, I spend an hour going through the, challenging the Vaughn Index that was at issue at that point. And she issues a new opinion, and then I move, again move for an award of attorney's fees. And she again denies it, even though basically the same thing. There's no dispute over anything except she thinks the FBI contends, and she agrees, that you've got to get the case over with first. And the result of this is to put me and my client in a really horrible situation where I can't begin to meet my obligations to properly advise her because I'm not being paid and she has no funds to pay me. And so at that point, there's another Vaughn Index to deal with. And what I say is that the FBI, she had previously on the previous Vaughn Index, she had set a precedent. The FBI had done the Vaughn sample. It's representative of the entire collection of documents. You have to go back through and apply what was learned as a result of the Vaughn sample to the documents, the non-sample documents. She agreed with that. She issued an order to that effect. But it comes, the issue comes up again after the second motion for interim fees. And there's another Vaughn sample, and I take the position that she can, if she has time, she can go ahead and rule on the motion for attorney's fees. She could have. But she, the precedent in the case was, and it makes total sense, is that the FBI has to complete its reprocessing again to see what has been learned from the Vaughn sample. Instead of doing that, she orders me to, once again, to proceed to file objections. And at that point, I decided that we've really got no alternative or we are going to be eternally put off on attorney's fees. There's no end to this. The rainbow recedes and recedes and recedes. And so I make a decision, a really wrenching decision, that we'll just have to let her go ahead and shut down the case. And then I can get to the Court of Appeals where maybe I can get some relief. Either I will get some relief or I can, if I don't get relief, I can make it so that there's a situation that needs to be dealt with. Now, on the interim fees, since filing for interim fees, you filed a post-final order petition for fees in the whole case? Yes. Including the interim fee request. Including those hours and that time within the... Yes, right. So, as an interim fee request, is that request not moot because it's been preceded by the fuller request for fees in the whole case? No, it's not moot first because there is the issue of whether or not interim fees are going to continue to be, are going to be honored and respected, or whether or not a requester has no way of dealing with them. Unlike some other, unlike some other, at least four other federal statutes that provide that you can appeal an interim award of attorneys fees, the Freedom of Information does not. However, the courts have made very clear, and the district court rules make very clear, that interim fees are encouraged. And the reason why they're encouraged is obvious. The attorney fee provision is the major method of enforcing the act. And so, in some sense, you're, you understand that this statute doesn't allow for that appeal, and that it does provide for interim fees, but at the discretion of the district court. And your experience in this case, from your perspective, is that's not good enough. That's just not supporting the litigation. It's not just this case. I've got three or four other cases in which the same thing has happened. I've got a case that was, that is now 28 years old. A magistrate recommended payment of interim fees in 1998. I still haven't been paid to date for that work, even though the government a year ago acknowledged that I was due at least $96,000. And in terms of what you're asking for from us, we face this, in the discretion of the district court standard, and the absence of a statute that provides for an immediate appeal of a failure to give interim fees. And so the relief you're asking for from us is... I'm asking that you rule that she erred in denying interim fees. That she abused her discretion. Pardon? That she abused her discretion. Yes, that she abused her discretion. Then there's several legal errors. She rested her decision in part, first of all, the decision was based primarily on decisions from foreign courts, not from the D.C. Circuit. Her decision was based on dicta in those cases, and in 2016 FEDSUP. But she ruled out, if you impose a hardship standard, but would not allow contingency fee representation to be considered hardship, discounted the hardship that I put forward on the grounds that it was not specific to the case involved, in spite of the fact that the amount of time spent on the case is obviously a hardship factor. Do you think the denial of interim fees is a final appealable error in and of itself? No, the... Well, I mean, you're in a conundrum, and I'm trying to think through how you get through it. If you can get through it, if it's not a final appealable error, and you've closed down the case, then we have a situation where we have to ask ourselves, well, he's closed down the case, so it's, I don't know whether you call it mootness, but the question isn't here anymore, because you've got a request for final fees, which will be appealable in the event that they're denied, or the request is not what you hoped for. So I don't know how we can reach back. You're looking for, one way to look at it is you're looking for an advisory opinion. You're saying the system stinks, and can't you, even though I don't have a final appealable order that I can bring to you on the interim attorney fees, can't you just say something in the opinion to effectively... No, I don't think I'm asking... So if you don't have a final appealable order, how do you get that question here? Well, the appealable order is her dismissal of the case. Alright, well you've got a final decision, and you have since filed for attorney's fees, so why would we fuss over whether you should have gotten interim fees? Because if you don't reach the question, you're eroding interim fees. Interim fees are a dead letter, and that erodes the purpose of the whole fee provision under the FOIA. It's absolutely critical to people, particularly those who represent clients on a contingency basis, that they be able, once they have substantially prevailed, to apply for interim fees. If they can't do that, then you have disincentivized anyone in that circumstance to represent plaintiffs, FOIA plaintiffs. Thank you, thank you. We'll let the government argue, and then... Okay, thank you, Your Honor. Good morning. May it please the Court. Assistant U.S. Attorney Dan Schafer for the appellees. I want to start with the point that Your Honor's finished here, which is the denials for the interim fees, because I think that's primarily what this appeal really is about. And I think a key issue here is that when you're a litigant in a FOIA lawsuit, you make choices, and there can be consequences for those choices. And Ms. Clemente, in this case, many times appeared that she was dead set on litigating this case forever. And in some cases, re-litigating the same issue time and time again, those include the issues that are before this Court, the sufficiency of the FBI search, the threshold exemption 7 issue. And so if the goal is simply to keep pushing out resolution of the case indefinitely and trying to use that to then get an interim fee award in the meantime, that's a litigation strategy. So it's not that the statute's broken, that there needs to be further guidance from this Court on the award of interim fees. This is a standard that gives a great deal of deference to the trial court for good reason, because the trial court is looking at all the circumstances of the case, looking at the conduct of both parties in the litigation. And part of the reason that the district court twice denied those requests for interim fees was because she was concerned about the glacial pace that the case was proceeding and that the case should have been nearing resolution instead of continuing in perpetuity. Well, that doesn't necessarily militate a denial of all requests for interim fees. That may just determine how much the judge is prepared to give. Judge may say, you know, your hours are inflated here because you stretched this out, and yeah, you're entitled to interim fees, but I'm not going to give you $100, I'll give you $20. No, but as a matter of the Court's discretion to manage its docket effectively, the district court made a determination that it had been more efficient to just deal with the whole fee issue at the conclusion of the case, which the case should have been nearing at that point, and then continued for another year or two. But that was not on any dilatory conduct on the part of the FBI, that was primarily because Ms. Clemente was insistent on continuing to litigate issues that had already been decided, such as the... I'm not sure, we're mixing up arguments here. Are we talking about punitive action by the district court on punishing you for stretching this out? I'm not sure, what are we talking about? No, it's not, it wasn't a punitive measure at all, but it was a, I think in part, that the district court, by the end of the case, and I'm not speaking for the district court, but certainly by the end of the case, its patience had run out, and I think the district court also was trying to bring this case to a resolution, conclusion, so it was a very appropriate exercise of the court's discretion to say, look, this case should be finishing soon, let's just deal with the fee issue at the conclusion of the case, and that's in fact what has happened, which as your Honor noted, Judge Edwards, the final fee petition has been fully briefed, that's pending before. Are they entitled to a judgment on the question of interim fees? I think your Honor raises a good question, which is, I think there is a question of whether this court has any jurisdiction at all to decide the appeal of the interim fee, the denials of the interim fee petition at this time, because there's no final decision, there's no final judgment with respect to the fee issue, the district court has concurrent jurisdiction to continue to resolve the fee dispute as this appeal to this court on the merits is pending, and so the more appropriate course at this point, I think would be for, if Ms. Clemente decides to appeal the final judgment on the full fee petition to decide any issues relating to interim fees at that time. Aren't there circumstances where the denial of interim fees could be a collateral order in appeal? Do you mean at the time of the denial? At the time of the denial, there's, this court has held, I believe in the National Association of Criminal Defense Lawyers case, that the denial of interim fees is not a final appeal of order, that it needs to follow a final judgment in the case, but what's not clear to me is whether that needs to be a final judgment in the case on the fee issue, or if it can be a final judgment on the merits. Why doesn't, why isn't there still an issue with the interim fees, even if there's litigation that's going on below about the full fee award, because if the argument for interim fees is, look, the denial of an interim fee is an abuse of discretion, because unless interim fees are available in these kinds of situations, you know, can't continue prosecuting the case, financial disincentives are too strong, some of the If you say that, well, once you ask for full fees, then that moots or somehow annuls the arguments for interim fees, then those issues never get aired. So it doesn't seem obvious that just because a post-judgment motion for full fees was asserted, that moots an appeal on the denial of interim fees, where the appeals otherwise properly before us because a final judgment was entered. Yes, Your Honor. I agree with that to some degree. I think that assumes, however, that there is some need here for more guidance from this Court on factors to consider in a denial of interim fees or an award of interim fees, and that's just not the case. The Supreme Court, as we noted in our brief, has said that there needs to be a great deal of deference to the trial court in deciding fee awards in FOIA cases. I think the difficulty in part, Mr. Schaffer, and I take it you were trying to address this with your argument that plaintiff was dragging the case out, but FOIA cases properly litigated do tend to be iterative. That, you know, the plaintiff here narrowed her request substantially. The government comes back with an initial disclosure. There's more information she wants. The Vaughn Index process is complicated. You know, it's in order to protect the government's prerogatives to keep confidential, excluded, exempted information, but it also has to be detailed enough that it doesn't disclose that information, but that it allows the plaintiff to assess whether her rights have been regarded, and you know, because presumably you've done these cases before, that that is an iterative process and it takes time, and I take some umbrage at your suggestion that she was dilatory in the litigation because up to the very last step, the court was still finding the Vaughn Index wasn't adequately specific, and you know, she was getting bit-by-bit information that she was entitled to. So in that, against that backdrop, it does seem like they're really, in this area, there is going to be a need for some interim fees. She sought fees in 2013, and it's now 2017. Yes, and in this case, Your Honor, you are correct. There was, over time, a narrowing of the issues, and with each subsequent round of briefing, there were three plus rounds of summary judgment briefing. By the end of the case, at that point, the numbers of documents and redactions in dispute between parties were very few. If you look at that last summary judgment opinion, at that point in time, the parties were disputing very sections of Exemption 7 that did not pertain to a great number of documents. And so at that point in the case, and this touches on two issues, both the fee issue, also the other issue counsel raised, which is the decision at the end of the case to dismiss the case, but also to the order in the second denial of interim fees included an order to allow Ms. Clemente to object to any parts of the bond, the seventh bond index that Ms. Clemente had received. If she had any objections, the court put in that second denial order, you have to give the court the objection by a certain date. That date came and went. And so there's now, for the first time in the briefing on appeal here, a new suggestion that that somehow violates, I think this was in a supplemental letter that Ms. Clemente filed with the court, that that violated the court's duties under Rule 56 to decide disputed fact issues, and that wasn't the case here. The final order dismissing the case, as we noted in our brief, was appropriate and was again a case management discretionary issue where at that point since the disputes between the parties were very few and didn't pertain to a large number of documents, the idea that we would have to go back and reprocess the entire document set another time, that would have been unreasonable to expect that of the FBI at that point in the case. Can I ask you a question about something, unless my colleagues have further questions on this issue, a question on a separate part of the case that hasn't been brought up, the placeholder documents that showed that there were portions that were in the New York file rather than in headquarters. So what confused me about that a little bit is if a FOIA requester files a request with Central Headquarters and they ask for an informant file and the FBI says, okay, we have an informant file here at Central Headquarters, here's the documents that we can disclose and then the FBI knows that there's an informant file for the same person in the New York office, what's the point of having a regulation that says, oh, you know, you filed it with us at Central Headquarters but you really need to redirect the same request to the New York field office, even though we know that there's a New York informant file that has documents in it. We could forward the email over to New York and tell them to produce the request because you need to direct your request to New York. Yes. My understanding is that this, at the point in time we're talking about here when the request was made, the FBI's governing regulations provided that you had to make a separate request to a regional office if you wanted to request documents from that office. Right, and by hypothesis the requester doesn't know where the documents are. They're just filing a request for an informant file on person X. Well, this is a sophisticated litigant. But the regulation is not directed just to sophisticated litigants. It's directed to everybody, and I guess I'm just wondering if you're a requester and you want to file, you don't know what office it's in, do you really have to, are you supposed to send the request to every field office? My understanding is, and I haven't looked at these regulations myself, but this had come up in my preparation for the argument, my understanding is that the rules today aren't so limited so that Yeah, they don't appear to say, and the regulations now, they don't have the field office limitation, at least for FOIA, it looks like for the Privacy Act they still do, but That's correct. That's my understanding also. But at the time, they were in effect, and it was clear from the correspondence between the parties and the court's orders on the sufficiency of the search earlier in the case, that since this request was directed to FBI headquarters only, if Ms. Clemente wanted documents from the FBI regional office, she had to make a request to them. So I don't dispute that the regulation was in effect, and just for purposes of our exchange, that the regulation was not complied with. I get that, that what the FBI has said in its regulations is, if you want documents from New York, you need to direct the request to the New York office. If you want documents for central headquarters, you direct the request to us. I'm just asking if you're a requester, and you don't know what documents are out there, that's why you file a FOIA request. You say, I believe there's an informant file for person X. You file it with central headquarters because that just seems like where you'd go, and how are you supposed to know that there are documents in New York? You may not know that. Well, in this case, it's illustrative, I think, that when Ms. Clemente became aware that there were documents at the New York regional office, she can make a request there, which is what she did. She happened to become aware because of the way the government responded after the suit was already filed. Yes. But in the normal course, the regulations tell a requester what they're supposed to do before litigation is ever filed. You don't have a hardy declaration at that point that tells you, you know, there was a New York informant file, and so you could file with New York. You don't know anything. It just seems, I'm just wondering what the rationale is for having a regulation that says it's not enough to file a request with central headquarters. You have to go to the field office when the FBI is the entity that's in the best position to know where the documents might be. Well, from the FBI's perspective, I think, you have, there has to be some, there's got to be some policies and guidance. I mean, there's, the FBI is huge, and there are documents all over the place, and they're dealing with a great, huge volume of requests. And so, and a request directed to headquarters is one thing. That cuts the other way in the sense that if it's hard for you to keep track with your detailed filing systems and your access to internal computers that will alert you what's where, if it's hard for you, how could a requester functionally be expected to know where to go? And even that field offices accept FOIA requests. Well, as I said, Your Honor, in this case, the FBI notified Ms. Clemente of its interpretation of the request in the letters that modified that request, the letter singular that modified the request, and when Ms. Clemente became aware that there was, that she had to make another request to the New York office, she could do that, and she did that. And there's, as I mentioned, a second case pending in district court right now. The FBI released a large volume of records from the New York office in connection with that litigation. And so, I don't see the same concern here about the, you know, some kind of insufficiency in the way the statute is set up and the DOJ's interpretations of that with respect to the headquarters versus the field office. Can I go back and just ask you a question on the sanctions? Did Jindrothstein explore less stringent sanction, whether something less severe than dismissal of the entire case might be effective? It's, I wasn't involved in the case myself at that point. I saw nothing in the court's order dismissing the case to suggest to me that that was part of the court's analysis, so I don't know that. But in this case, I think dismissal was appropriate. Was it sanctions? Was it a sanctions dismissal? I don't view it as a sanction. No, I don't. Because the government had a motion on file to enter judgment in the government's favor. Is that not right? I don't know. Maybe that's not right. Do you have a summary judgment? I'm not sure. I'm not sure about that. As I read the record, the government actually had agreed with Ms. Clemente that even though the court had said, I'm not going to give you extensions, the government had agreed that an extension was, it didn't oppose an extension. And she said, I can't do this in time. And then the court dismissed. That may be correct, but I'm not certain about that either, Your Honor. I apologize. Can you tell me one more time, make sure I understand you? Because I'm assuming once judgment has entered under our case law, even though we haven't really decided the question, I'm assuming once judgment has entered, that an appeal can be taken in the denial or request of interim fees. That's my assumption. You don't have to argue with one lawyer. I'm just telling you this so you understand it. Assuming that's right. You can't read it for sure, but our case law certainly doesn't foreclose that possibility.  Okay, so let's assume that's right. Tell me again, why did the district court judge not abuse its discretion in denying the request for interim fees at the last stage? Don't say because they have great discretion, because I understand that. But why was there no abuse of discretion, given how long the case had gone on, the obvious need for funds, et cetera? Why was there no abuse of discretion when the court said, I'm just not going to do it? Well, the four factors that the court looked at were the four factors from the Powell decision, which we discussed in our brief. And one of those factors looks at the financial hardship to the requester. And to take, for example, the second request, Ms. Clemente had asserted that the litigation couldn't continue because there was this serious financial hardship. And during the briefing, the court became aware that Ms. Clemente's counsel had just received a very large fee award from another case, just a matter of days before. This was at the end? That's what I'm talking about. This was the second request. The last. I'm talking about the end. Yeah, that was the end. OK. And so the court found, I think, quite reasonably that that undercut Ms. Clemente's claim that her counsel could not continue litigating the case because he couldn't afford it. The other issue that the court looked at was there was a great deal of discussion in Ms. Clemente's request about Ms. Clemente's own financial situation. And one of the determinations that the court made was that since this is a contingency case... It's not a contingency fee. I didn't know why you characterized that way. It's fee shifting, no? Contingency case, that's how Ms. Clemente characterizes it. Well... But I agree with you, Your Honor. I mean, it's interesting to see... There's no pot of money here that might provide a more-than-hourly compensation to a lawyer. And the reason that I insist on that difference is because I think the calculus in terms of case-to-case funding that goes on if you're a contingency practice is different from the calculus if you're a simply fee shift practice. The money that the lawyer recovers for past work is he's basically getting income that he's entitled to for past work. And the work on this case, he hasn't had any income on that. It's different from cross-subsidization and taking risk assessments about which personal injury cases are going to bring you what in the individual case might be considered a windfall because you took a risk. That's not what we're talking about here. Yes. And when Ms. Clemente made submissions requesting those interim fees, saying that her counsel submitted a declaration in support of that saying that this case was on contingency, what I understood that to mean was that he was not paying Ms. Clemente hourly for the work that's been on the case and his compensation would be in the form of the fee shifting that would come with the resolution of the case. Yes. Or on an interim basis. Or on an interim basis. Yes. And if there are no further questions, we ask that the Court confirm. Okay. Thank you. We'll give you two minutes back for rebuttal. Well, there's a lot of things that have come up. I was just likely to advise you that with respect to the question that has been raised about the law and the practices of requiring requesters to submit requests to each different field office, the practice has been somewhat inconsistent and it's really undercut by the fact that what happens when you submit a request to a field office is that it then gets referred back to headquarters. So it's duplicative effort. It imposes a burden on the requester that a requester shouldn't have to meet. Secondly, as to the detrimental effects of it, aside from putting the requester to the burden of going through the process of trying to identify which field offices he or she should write to, you have to understand that in general, in FBI files, there are four times as many records in field offices as in headquarters. So the field offices, particularly the Office of Origin, are the most important ones to direct a request to. We found out in the course of handling the request of Harold Weisberg for information on the John F. Kennedy assassination that for years the FBI had been searching its headquarters index and saying they didn't have documents on this, that, and the other thing. And then we eventually found out that they had a field card index, 44,000 card index in Dallas. That's where all the information was. But we didn't know that. So it has a very practical, devastating impact on the requester. And it is not, judicially, it's not administratively efficient. You're increasing the work on the part of the agency and the requester both. Now, the question with respect to the fact that the records at issue, according to the FBI, had been narrowed very greatly by the time the final, after the time of the second interim motion for fee awards and after the third or fourth motion for summary judgment had been filed. We don't know to what extent it had been narrowed because the FBI hasn't looked at the non-sample documents. We don't know what issues there would be in those non-sample documents that might require further litigation. So it's simply speculative to say that it had narrowed. Yes, it had narrowed somewhat, but it could still involve a great deal of effort, in addition to which there were continuing throughout the case, there were new developments. My client was getting new information that may relate to any of these issues or any of these documents, so you couldn't say with any certainty how much additional time would be needed to do that. I would like finally to mention that we've sort of skipped over the search issue to a large extent, but one thing that is of importance is that on page 7 of my opening brief, we note that in the case of DiBecchio v. DiBecchio, the court there noted that the FBI's Office of Professional Responsibility, the OPR, had conducted an investigation of the questions arising out of the relationship between DiBecchio and Scarpa. That document has not been provided. It's a 550-page document. It is a headquarters document, and the FBI claims that they produced everything that was at headquarters. They haven't produced it, and there are other documents that they haven't produced. For example, the records relating to the Mississippi civil rights cases. Can you bring it to a close since the time is back? Well, I'd just say that in that regard, it is not credible that only a couple of documents relating to Scarpa's being sent down to investigate the civil rights document exist because you had extraordinary national publicity. You had J. Edgar Hoover himself personally involved in the case. You had allegations of payments of to carry out that job, all of which would indicate that there should be headquarters records relating to that. I'll conclude with that. Thank you very much, Your Honor. Thank you. Case is submitted.
judges: Srinivasan, Pillard, Edwards